UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO: 8:19-CV-1673-T-33AEP

JOHNSON & JOHNSON, ETHICON, INC.,
and ETHICON US, LLC,

    Plaintiffs,

vs.

XS SUPPLY, LLC, JON M. BIRD, TYLER
BERGER, IVAN RODIMUSHKIN,
DAVID W. LONGDUE, III and BRENDAN
THOMAS, LION HEART SURGICAL
SUPPLY, LLC, LION HEART SURGICAL
SUPPLY CORP., FABIAN CONDE and
JANAINA D. NASCIMENTO, PURE CARE
TRADERS F.Z.E. and ALI HUSSAIN,

    Defendants.
_____/

## LION HEART DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING THE DEPOSITIONS OF THE LION HEART DEFENDANTS AND TO TEMPORARILY STAY CASE PENDING COMPLETION OF CRIMINAL PROCEEDINGS

Defendants, Lion Heart Surgical Supply, LLC, Lion Heart Surgical Supply Corp., Fabian Conde, and Janaina D. Nascimento (collectively, the "Lion Heart Defendants"), through undersigned counsel, move for a protective order and to temporarily stay this case pending completion of pending criminal proceedings and state:

### Introduction

Defendant Janaina Nascimento ("Nascimento"), one of the Lion Heart Defendants, is facing criminal proceedings arising out of the same alleged sale of the counterfeit products that is the subject of this civil case. The United States Attorney for the Eastern District of Kentucky sent correspondence to Ms. Nascimento asserting criminal charges for alleged violations of 21

U.S.C. 331(a) and 333(a)(2) with an enclosed Financial Affidavit identifying the case of *United States v. Janaina Nascimento*. In that letter, the U.S. Attorney unequivocally stated that "[o]ur office will prosecute you." The U.S. Attorney's letter provided Nascimento with only two possible outcomes: reference to the grand jury for indictment or entry of a guilty plea. Nascimento has retained criminal counsel and disputes the criminal charges asserted.

Discovery in this case has proceeded and the Lion Heart Defendants have responded to written discovery and produced documents. The discovery cut-off is December 8, 2020. The parties recently conferred to create a tentative deposition schedule that includes approximately ten (10) days of depositions of witnesses for the Plaintiff and Defendant XS Supply in October and November. In addition, the Plaintiffs have requested to depose Defendants Nascimento and Fabian Conde ("Conde"), the principals of Lion Heart, and Lion Heart's corporate representative in November.

Due to the pending criminal proceedings, Nascimento and Conde, upon advice of criminal counsel, intend to assert the Fifth Amendment privilege at their depositions. Nascimento, in particular, is a critical witness in this case. Lion Heart is a small company and Nascimento handled all of its day to day operations. Nascimento was the only person from Lion Heart involved in the sale of the alleged infringing Surgicel product to Defendant XS Supply and is therefore its only witness with personal knowledge of this transaction. Further, Nascimento is the only Lion Heart witness with personal knowledge of the first attempted sale to Randy Ware, a non-party upon whose testimony the Plaintiffs are relying in support of their claims.

The key issue in this case is Plaintiffs' claim of willfulness. Plaintiffs Johnson & Johnson, Ethicon, Inc. and Ethicon US, LLC (collectively "Johnson & Johnson") are seeking $6,000,000.00 in enhanced statutory damages from the Lion Heart Defendants because they

allege that the Lion Heart Defendants' sale of allegedly counterfeit and infringing Surgicel products was willful. Because Nascimento will be invoking her Fifth Amendment privilege, she will not be able to explain or rebut Plaintiffs' claims regarding her subjective intent regarding these transactions and she is the only person who can do so.

As set forth in the memorandum of law below, this Circuit authorizes a stay under the circumstances. The Lion Heart Defendants should not be significantly prejudiced in their ability to defend a $6 million claim because of Nascimento and Conde's invocation of their constitutional Fifth Amendment privileges. Accordingly, the Lion Heart Defendants seek a stay in this civil case of 180 days in light of the pending criminal proceedings.

Alternatively, the Lion Heart Defendants propose to continue with discovery but to limit the stay to the depositions of the Lion Heart Defendants and the filing of dispositive motions for the 180 day proposed stay period. By employing this alternative, the parties can complete most of the depositions scheduled before the December 8, 2020 discovery cut-off and all that will remain to prepare the case for trial will be the depositions of Nascimento, Conde (individually and/or as Lion Heart's corporate representative) after the expiration of the stay. This case is not scheduled for trial until October 2021 and there is sufficient time to extend the discovery cut-off solely as to the Lion Heart depositions and postpone dispositive motions. The Plaintiffs will not be prejudiced because they have seized the products at issue and a temporary injunction is in place to protect against future infringements by any Defendant. Johnson & Johnson is a large publicly traded corporation and a delay in its pursuit of claims for money damages will not materially affect its business or cause any prejudice.

**Background**

Plaintiffs filed this action regarding the sale of alleged counterfeit Surgicel Absorbable Hemostat, a textile product use to stop or reduce bleeding in surgical procedures. The subject product was discovered at the University of Kentucky Medical Center. Johnson & Johnson filed this action in July 2019 and immediately obtained two *ex parte* Seizure Orders [Doc. 32, 42].[1] Johnson & Johnson subsequently executed the seizure orders and collected multiple units of Surgicel products from Lion Heart. Johnson & Johnson also obtained a temporary injunction against Lion Heart, precluding it from selling any infringing product.

On October 4, 2019, Johnson & Johnson filed its Second Amended Complaint [D. E. 116] alleging that the Lion Heart Defendants purchased, received, sold, and shipped counterfeit products, misbranded as authentic Surgicel products in interstate commerce. (*Id.* at ¶¶ 63, 67, 69, 71). Johnson & Johnson assert multiple violations of the Lanham Act, various Florida Statutes, and common law claims against the Lion Heart Defendants. In addition to permanent injunctive relief, Johnson & Johnson has indicated in discovery that it seeks statutory damages of $6,000,000.00 against the Lion Heart Defendants because it alleges that their infringement was willful.

**The Criminal Proceedings**

On January 24, 2020, the United States Attorney for the Eastern District of Kentucky sent Nascimento a letter advising her that "[o]ur office will prosecute you." As described above, the U.S. Attorney's letter provided Nascimento with only two possible outcomes: reference to the grand jury for indictment or entry of a guilty plea. The letter enclosed a Financial Affidavit that

---

[1] The Seizure Orders permitted Plaintiffs to seize Surgicel product, all business records regarding sale of Surgicel product and any equipment used to manufacture or label Surgicel product from the Lion Heart Defendants as well as from Defendants XS Supply, LLC, Jon M. Bird, Tyler Berger, Ivan Rodimushkin, David W. Longdue III, and Brendan Thomas.

identifies the case of *United States v. Janaina Nascimento* on felony charges of violations of 21 U.S.C. 331(a) and 333(a)(2). Nascimento retained criminal counsel.[2] Criminal counsel immediately began a detailed investigation into the event. Subsequently, criminal counsel put together a lengthy presentation for the Kentucky federal prosecutor to demonstrate that Nascimento did not knowingly and willfully sell counterfeit products to the University of Kentucky, and that she acted diligently and in good faith. Counsel made their presentation on April 14, 2020 to the prosecutor and investigating federal agent. Since that time, they have provided additional information and documents to the U.S. Attorney's Office at the request of the prosecutor. As a result of the pandemic and other priority matters, the U.S. Attorney's Office has been delayed in its decision and proceedings against Nascimento. It has not yet withdrawn its "target" letter against her.

The Lion Heart Defendants have continued with their defense of this action and have participated in discovery to date in good faith in the hope that the criminal proceedings would be resolved prior to their depositions so that they could defend this civil action. However, with the December 8, 2020 discovery cut-off now looming, and Johnson & Johnson seeking to depose the Lion Heart Defendants in November, the Lion Heart Defendants are faced with the prospect of suffering an adverse judgment for $6 million because they are unable to effectively defend the willfulness charges without Nascimento's testimony.[3]

---

[2] Nascimento changed her criminal counsel in late February 2020.

[3] Conde is an officer and member of Lion Heart but his practical role is as an investor. Nascimento operated the company on a day to day basis. Conde denies that he should be personally liable in this action because he lacks a sufficient nexus to the transactions at issue. However, Conde plans to invoke the Fifth Amendment at direction of criminal counsel in light of the pending charges by the U.S. Attorney's office relating to the sale of the Surgicel product, as he has not been expressly excluded as a target by the U.S. Attorney. Conde's inability to testify further restrains the Lion Heart Defendants from explaining the events of this case from Lion Heart's prospective and from defending the claims of willfulness.

As set forth below, a stay of these proceedings for 180 days is warranted under the circumstances. Alternatively, this Court can use its discretion in managing its docket to postpone the Lion Heart depositions and stay dispositive motions for the requested 180 day stay period.

## **MEMORANDUM OF LAW**

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366–67 (11th Cir. 1997) (stating district courts "enjoy broad discretion in deciding how to best manage the cases before them") (citation omitted). A district court can use this power and issue stays to promote judicial economy, to reduce confusion and prejudice, and to prevent inconsistent decisions. *See Clinton*, 520 U.S. at 706–07; *see also Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984). To that end, a district court may "stay a case pending the resolution of related proceedings in another forum[.]" *Ortega Trujillo v. Conover & Co. Comm'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (per curiam); *see also Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir.2009) (district court's reason to stay was "at least a good one, if not an excellent one" where it was designed to await determination of a related matter "that is likely to have a substantial or controlling effect on the claims and issues in the stayed case").

"No question exists" that a district court "has the power to stay a civil proceeding due to an active, parallel criminal investigation." *S.E.C. v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003). "Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action,

sometimes at the request of the prosecution…sometimes at the request of the defense..." *United States v. Kordel*, 397 U.S. 1, n. 27 (1970) (internal citations omitted).

A court may use its discretion to stay civil proceedings pending the outcome of a parallel criminal proceeding "when the interests of justice seem to require such action." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (internal quotations omitted). The most important circumstance to balance is a civil litigant's right to defend the civil case versus her privilege against self-incrimination:

> Other than where there is specific evidence of agency bad faith or malicious governmental tactics, **the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil** or administrative **action involving the same matter**. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.

*Id.* at 1375–76 (emphasis added). *See also*, *In re Zinnel*, 2013 WL 2449546, at *3 (E.D. Cal. June 5, 2013) ("The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.").

The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case." *State Farm Mut. Auto. Ins. Co. v. Felinger*, 2017 WL 5953299, at *2 (S.D. Fla. Nov. 20, 2017). District courts within the Eleventh Circuit have considered the following factors in determining whether the interests of justice require a stay: (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the interest of the plaintiff in proceeding

expeditiously with this litigation and the potential prejudice to the plaintiff from delay; (3) the burden any particular aspect of the proceedings may impose on the defendant; (4) the efficient use of judicial resources; (5) the interests of persons not parties to the civil litigation; (6) the interests of the public in the pending civil and criminal litigation; and (7) the extent the issues in the civil and criminal cases overlap and the status of the criminal case. *Id.* at *2; *see also, United States v. Pinnacle Quest Int'l*, 2008 WL 4274498, at *1–2 (N.D. Fla. Sept. 11, 2008).

Courts in this Circuit have applied this analysis in determining that a stay was warranted in light of a party's invocation of the Fifth Amendment privilege as the circumstances required. For example, in *Cabeza v. City of Orlando*, 2015 WL 1334376, (M.D. Fla. Mar. 24, 2015) the plaintiff was involved in an altercation at bar with Orlando police officers. The altercation resulted in the plaintiff's arrest for battery on a law enforcement officer and resisting arrest with violence. *Cabeza*, 2015 WL 1334376 at *1. The plaintiffs filed a civil lawsuit alleging battery violations of 42 U.S.C. § 1983 against the officers. *Id.* During discovery, the plaintiff invoked his Fifth Amendment privilege against self-incrimination. Defendants seized this opportunity to seek dismissal of plaintiff's lawsuit or stay the case until the criminal case had been resolved. The court refused to dismiss the lawsuit but found the entry of a stay to be appropriate. *Id.* at *3 The court stayed the case until the underlying criminal case was resolved so that the plaintiff's "testimony will no longer carry the risk of self-incrimination." *Id.*

Similarly, in *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084 (5th Cir. 1979), the plaintiffs sued the defendant for publishing an allegedly defamatory story about the defendants defrauding a federal student-loan program. The broadcast stated that the plaintiff had defrauded both his own students and the federal government through abuse of federal student loan and grant programs. *Wehling*, 608 F.2d at 1086. When the defendant sought discovery from plaintiff

8

concerning the details of the operation of these schools, the plaintiff invoked his Fifth Amendment privilege against self-incrimination. *Id*. The plaintiff move to stay discovery until "all threat of criminal liability ... ended" which was in effect a request for a three-year stay when considering the expiration date for the statute of limitations. The court granted the stay, reasoning that "[a]lthough a three-year hiatus in the lawsuit is undesirable from the standpoint of both the court and the defendant, permitting such inconvenience seems preferable at this point to requiring plaintiff to choose between his silence and his lawsuit. *See also, Perkins v. City of Miami Beach,* (S..D. Fla. 2014)(No. 14-Civ-21923-Ungaro [D.E. 56])(granting a stay where the court found that if the cases were allowed to proceed, "defendants may choose to assert their Fifth Amendment rights which may lead to any adverse judgment against the defendants" and in the alternative, if discovery proceeded, it could cause "irreparable harm and prejudice to Defendant in the criminal investigation.").

In the instant case, a review of the factors at issue weigh heavily in favor of a stay. Because of the U.S. Attorney's letter to Nascimento indicating that "our office will prosecute you," the implication of the Fifth Amendment is clear. The Plaintiffs will not be harmed by a delay because a temporary injunction has been entered and it will not suffer prejudice by a delay in pursuing its money damages claim. Contrarily, the Lion Heart Defendants will suffer great prejudice because they will be precluded from using Nascimento's testimony as a defense to the Plaintiffs' willfulness claim, which would be the only direct evidence about Nascimento's state of mind. The Lion Heart Defendants' inability to present critical evidence due to Fifth Amendment assertions may lead to an adverse judgment, which is sufficient reason to stay these civil proceedings. *See, Young v. Miami-Dade Cty*., 217 F. Supp. 3d 1353, 1355 (S.D. Fla. 2016)

(granting stay to party that was unable to use probative evidence due to potential invocation of Fifth Amendment privilege).

Further, there is no dispute that the issues in the criminal and civil cases overlap. Both the criminal proceedings and the instant case arise out of allegations that the Lion Heart Defendants knowingly sold counterfeit Surgicel product. With regard to the criminal proceedings, the United States government is alleging criminal charges against Nascimento for violation of 21 U.S.C. §1331(a) and 1332(a)(2).[4] The United States government alleges that Nascimento "introduced misbranded medical devices into interstate commerce, specifically, counterfeit Surgicel Absorbable Hemostat, that was ultimately shipped and sold to the University of Kentucky Medical Center."

This is the exact same conduct that forms the basis for the civil claims. In the Second Amended Complaint, the Plaintiffs allege that Nascimento and the other Lion Heart Defendants were involved in the sale of Surgicel Absorbable Hemostat that was ultimately shipped to the University of Kentucky. Therefore, this factor is clearly established.

In *Afro-Lecon Inc. v. United States,* 820 F.2d 1198 (Fed. Cir. 1987) the court identified an additional important concern in conducting this analysis in a case where the court reversed the refusal to enter a stay. The court noted that the scope of civil discovery is much broader than criminal discovery and therefore the government may obtain the benefit of civil discovery in a number of ways, which may provide a "point-by-point review of the civil case [and] may lead to

---

[4] Section 331(a) prohibits conduct related to the adulteration or misbranding of any drug or device in interstate commerce, including the introduction, delivery, or receipt of any such product in interstate commerce. Section 333(a)(2) provides, in part, that any person who commits such a violation with the intent to defraud or mislead shall be imprisoned for not more than three years or fined not more than $10,000, or both.

a 'link in the chain of evidence' that unconstitutionally contributes to the defendant's conviction." *Id., quoting Hoffman v. United States,* 341 U.S. 479, 486 (1951).

### Conclusion

In the instant case, Nascimento was the only person from the Lion Heart companies involved in the subject sale of the Surgicel products at issue and the prior attempted to sale to Ware. If Nascimento is not able to testify to rebut Johnson & Johnson's claims of willfulness, the individual and corporate Lion Heart Defendants cannot properly defend Plaintiffs' claim to a $6 million judgment because Nascimento invoked her Fifth Amendment privilege.[5]

Accordingly, the Lion Heart Defendants respectfully request that this Court enter a stay of this action for a 180 day period. Alternatively, as is within the Court's discretion and its power to manage its cases, the Lion Heart Defendants have proposed entry of a protective order and/or stay with regard to only their depositions and the filing of dispositive motions, whereby the Court extends the discovery cut-off with regard to the Lion Heart depositions and allows the parties to complete the depositions of the Plaintiffs and the XS Supply Defendants, so that this case may be expeditiously prepared for trial at the time the stay is lifted. Further, if the criminal proceedings were to be resolved prior to the expiration of the 180 day period, the stay would be immediately lifted. As a further case management issue, the Lion Heart Defendants would

---

[5] This may not apply to Defendant Conde individually unless Johnson & Johnson also proves that he had sufficient involvement in the conduct at issue, although Nascimento being unable to testify would certainly severely negatively impact his defense in that regard as well. Further, Conde's inability to testify regarding the level of his involvement in the subject transaction due to invocation of the Fifth Amendment will severely compromise his personal defense.

11

suggest that they be obligated to file a status report every sixty (60) to ninety (90) days regarding the status of the criminal proceedings so that this Court remains informed on this issue.[6]

### Local Rule 3.01(g) Certification

Before filing this Motion, counsel for the Lion Heart Defendants conferred with counsel for the Plaintiffs and the XS Supply Defendants in a good faith effort to resolve the issues raised by this motion. The Plaintiffs object to the granting of any relief under this motion. The XS Supply Defendants object to any partial stay of the proceedings as suggested herein. The XS Supply Defendants do not take a position with regard the Lion Heart Defendants' request for a stay of the action for 180 days.

Respectfully submitted,

FOX ROTHSCHILD LLP
One Biscayne Tower
2 South Biscayne Blvd., Suite 2750
Miami, FL 33131
Telephone: 305-442-6540

By: /s/ Adam J. Lamb
ADAM J. LAMB
Florida Bar No. 899046
alamb@foxrothschild.com

- AND -

KENNETH G. TURKEL, ESQ.
BRAD F. BARRIOS, ESQ.
BAJO | CUVA | COHEN | TURKEL P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
E-mails: kturkel@bajocuva.com
bbarrios@bajocuva.com

*Attorneys for Defendants, Fabian Conde, Janaina Nascimento, Lion Heart Surgical Supply Corp. f/k/a Lion Heart Surgical Supply, LLC*

---

[6] In *Cabeza supra,* after court granted the motion to stay the case pending the resolution of the underlying criminal case, the court directed the defendant to file a status report on a date certain and every 90 days thereafter, detailing the status of his criminal case.

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that on this **2nd** day of **October, 2020**, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

By: */s/ Adam J. Lamb*
ADAM J. LAMB

114802964.v3